PHILLIPS *v.* DIAMOND COAL MINING CO.

(*Knoxville*, September Term, 1939.)

Opinion filed November 25, 1939.

MAE R. STRICKLIN, of Wartburg, J. W. STONE, of Harriman, and J. L. HUGHETT, of Louisville, Ky., for complainant.

JOEL H. ANDERSON, of Knoxville, for defendant.

MR. JUSTICE MCKINNEY delivered the opinion of the Court.

While petitioner was employed by defendant as an electrician and operator of a coal-cutting machine he received an injury to his right leg necessitating its amputation just below the hip. Liability is conceded, the controversy being limited to the amount of compensation. The only injury alleged in the petition is the loss of a leg.

The defendant, in its answer, admits liability for $9.29 per week for one hundred and seventy-five weeks, less sums already paid, for the loss of a leg, as specified in subsection (c) of section 6878 of the Code, and the chancellor so decreed.

Petitioner contends that he is entitled to $11.64½ per week for four hundred weeks, and $5 additional for one hundred and fifty weeks for total permanent disability.

We think the chancellor was correct in holding that petitioner, under the allegations of his petition, was only entitled to compensation for the loss of a leg. The petition was evidently drafted upon the erroneous theory that petitioner was entitled to compensation for total permanent disability for the reason that he could no longer carry on his avocation of electrician and op-

erator of a coal-cutting machine at a coal mine, this being the only work that he had ever done, or for which he was qualified. It was expressly ruled otherwise in *Catlett* v. *Chattanooga Handle Co.*, 165 Tenn., 343, 347, 55 S. W. (2d), 257, 258, in which it was said:

"To constitute earning capacity as the test, it might be said that the loss of one eye or the loss of one hand or the loss of one toe would not constitute partial permanent disability and so justify the allowance of compensation for such loss. Therefore the courts cannot, as is done in some of the states, measure the employee's compensation by degrees of incapacity. We are controlled by the schedules of the act where and when they measure the compensation for disability by reference to loss of a specified member of the body. The loss of a finger or a toe or even a member of the body might not in every instance produce incapacity; but even so, the act will not admit of a proportionate reduction of compensation dependent upon degrees of capacity. *Knoxville Knitting Mills Co.* v. *Gaylon,* 148 Tenn., 228, 255 S. W., 41, 30 A. L. R., 976; *Shelbyville* v. *Kendrick*, 161 Tenn., 149, 29 S. W. (2d), 251."

Where the injury is confined to the loss of a single member of the body compensation is limited to the sum which the statute specifically provides for such loss, regardless of the earning capacity of the injured employee.

In the cases of *Kingsport Silk Mills* v. *Cox*, 161 Tenn., 470, 33 S. W. (2d), 90, *Central Surety & Ins. Corp.* v. *Court*, 162 Tenn., 477, 36 S. W. (2d), 907, and *Russell* v. *Virginia Bridge & Iron Co.*, 172 Tenn., 268, 111 S. W. (2d), 1027, 1031, invoked by defendant, the injured members were not actually lost, and the injuries were greater than the loss of such member would have been. In the

last-named case the court quoted approvingly from *Standard Accident Insurance Co.* v. *Williams* (Tex. Com. App.), 14 S. W. (2d), 1015, 1016, in which a painter had fractured one arm rendering him totally incapacitated, as follows:

"If the injury does not extend beyond the member, the loss is definitely and arbitrarily fixed so as not to exceed the complete loss of that member under the statutory scheme of compensation. But we take the rule to be, if an injury to a specific member does not stop with the injury to or loss of that member, but for any reason continues as an injury affecting the body to such extent as to result in permanent or partial total disability, a recovery may be had therefor, even exceeding the statutory compensation for the complete loss of that member. In such a case, the injury is general and not confined to the specific member."

■ Counsel, in an endeavor to bring the present cause within the total permanent disability provision of the Workmen's Compensation Law, Code 1932, section 6878 (d, e), offered testimony that as the result of said accident petitioner also suffered a back injury, a paralysis of the muscles of the abdominal wall, injury to the sacroiliac joints, and serious impairment of the nervous system, which injuries, in conjunction with the loss of the leg, rendered him totally permanently disabled. The chancellor properly excluded this testimony because no such injuries were alleged in the petition, and defendant had no notice that petitioner would claim to have received such injuries and was not given an opportunity to prepare to meet this new theory of liability.

Section 32 of our Workmen's Compensation Law, section 6885 of the Code, provides that "the party invoking

the power of said court shall file a petition setting out the facts on which the claim is based under this chapter."

In Gibson's Suits in Chancery (Chambliss Ed.), sec. 406, it is said:

"The object of a pleading is to give the opposite party and the Court notice of what matters of fact and law the pleader intends to submit to the decision of the Court. As to these matters, and none others, proof must be made, if they are disputed; and on these, and none others, a decree must be based; if proof is made as to other matters, such proof is impertinent; and if a decree is based on other matters, to that extent it is *coram non judice* and void."

The general rule in this class of cases seems to be that the petition should state the nature of the injury so as to advise the employer of the nature of the claim and enable him to prepare to meet it.. 71 C. J., 1009; Schneider's Workmen's Compensation Law, vol. 2, p. 1951.

The following statement of the Supreme Court of Michigan, in *Reck* v. *Whittlesberger*, 181 Mich., 463, 148 N. W., 247, 249, Ann. Cas., 1916C, 771, is apposite, to-wit:

"While it was evidently the intent of this law that, by concise and plain summary proceedings, controversies arising under the act should be promptly adjusted, under a simplified procedure unhampered by the more technical forms and intervening steps which sometimes cumber and delay regular litigation, yet the language of the act, and provision for review of questions of law, indicate clearly an intent that the elementary and fundamental principles of a judicial inquiry should be observed, and that it was not the intent to throw aside all safeguards

by which such investigations are recognized as best protected.''

■ With respect to the average weekly wage of petitioner, we find no evidence to support the finding of the chancellor that it was $19.79 further than a statement in the answer to that effect. The petitioner had been employed by defendant only eighteen days when he was injured. For the first twelve days he was paid $4.50 per day, when his wages were raised to $6 per day, and he was paid that sum for the last six days that he worked. It appears from the evidence that the mines are not operated regularly, making the amount of compensation which an employee might receive during a period of fifty-two weeks uncertain. Defendant introduced testimony to the effect that at another coal mine in the same county four operators of coal-cutting machines received an average weekly wage of $17.80 for fifty-two weeks. These employees, however, were not electricians, as was petitioner, and for that reason earned less than petitioner.

Petitioner, for nine years preceding his employment by defendant, had been in the employ of Rex No. 2 LaFollette Coal Mining Company in Campbell County, engaged in the same character of work that he was doing when injured. For the last fifty-two weeks that he was employed by the LaFollette Company he received $1,086.60, or an average weekly wage of $20.90. This, in our opinion, furnishes the most equitable basis for computing the compensation petitioner is entitled to receive. The decree of the chancellor will be modified so as to decree petitioner $10.45 for one hundred and seventy-five weeks, less payments heretofore made. The costs will be divided.